UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WELLS FARGO BANK WISCONSIN, N.A.,

                              Plaintiff,     CIVIL CASE NO. 03-40340

v.

                                            HONORABLE PAUL V. GADOLA
HP/MANAGEMENT GROUP, INC.,          U.S. DISTRICT COURT

                Defendant/Third-Party Plaintiff,

v.

HEALTHLINK SERVICES, LLC,

                Third-Party Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Plaintiff Wells Fargo Bank Wisconsin's Motion for Partial Summary Judgment. For the reasons below, the Court grants Plaintiff's motion.

**I.    Background**

Plaintiff Wells Fargo Bank Wisconsin, N.A., formerly known as Norwest Bank Wisconsin, N.A. (the "Trustee"), is the trustee to six separate bond financing transactions used by a corporation (originally called "The Malachi Corporation," but now going by the name "Doric Corporation") to purchase seven nursing homes. After Malachi/Doric Corporation defaulted on the financings, Trustee Wells Fargo filed suit in this Court, Civil Case No. 99-40146, *Norwest Bank Wisconsin v. The Malachi Corporation, Inc.* Subsequently, on March 31, 1999, the Court issued a Receivership Order appointing HealthLink Services, LLC (the "Receiver") as the receiver of the seven nursing homes, and creating six separate receivership estates, one receivership estate for each separate bond

financing transaction.

The First Amended Order Appointing Receiver, issued by this Court on August 11, 1999, sets out certain directives to be followed by the Receiver. The relevant provisions state:

> 5. The Receiver is hereby authorized, empowered, and directed to establish interest-bearing bank accounts for the deposits of monies collected or received from the Facilities, and to account for the revenues of Each Separate Facility individually. . . . It is expressly ordered that the Receiver shall maintain six (6) separate receivership estates as follows: (1) Bangor Facility; (2) Riverview Facility; (3) Redford Facility; (4) Gillett Facility and Wautoma Facility; (5) Princeton Facility; and (6) Manitowoc Facility.
> 6. Monies coming into the possession of the Receiver and not expended for any purposes authorized by this order shall be held by the Receiver in interest-bearing accounts for Each Separate Facility, for the benefit of the Bond Holders and other creditors of the relevant Receivership estate.
> 7. The Receiver is hereby authorized, empowered, and directed to pay out of the funds derived from the operation of Each Separate Facility, to the extent revenues are available from Each Separate Facility . . . . costs and expenses of operating and maintaining Each Separate Facility . . . .

Exh. 11, Pl. Mot. Sum. Judg., docket entry 73 (Sept. 30, 2005).

Pursuant to the Receivership Order, the Receiver entered into separate "Long Term Care Facility Management Agreements" ("Management Agreements") with HP/Management Group, Inc. (the "Manager") for each facility. Each Management Agreement had identical terms and gave to Manager HP the authority to "manage all aspects of the operation of the Facility, including but not limited to staffing, accounting, billing, collections, setting of rates, and charges and general administration." Section 1.03, Exhs. 3-9, Pl. Mot. Sum. Judg., docket entry 73 (Sept. 30, 2005). The Management Agreements also stated that:

> Manager in the Facility's name and on behalf of Receiver shall deposit in a bank account or accounts of the Facility (the "Operating" Accounts") established in Receiver's name all funds received from the operations of the Facility. Receiver shall provide sufficient working capital for the operation of the Facility and shall make deposits in the Operating Accounts of such working capital from time to time upon the request of Manager. All costs and expenses incurred in the operation of the

Facility shall be paid out of the Operating Accounts.

Section 1.05, Exhs. 3-9, Pl. Mot. Sum. Judg., docket entry 73 (Sept. 30, 2005).

After conducting an accounting in 2001, Trustee Wells Fargo discovered that Manager HP had diverted well over a million dollars from four of the profitable receivership estates (the Bay City, Princeton, Manitowoc, and Riverview nursing homes) to other receivership estates that were not as financially stable. On December 29, 2003, after obtaining leave from this Court, Trustee Wells Fargo filed the above-captioned case against Manager HP., Civil Case No. 03-40340. In its Second Amended Complaint filed on February 27, 2004, Trustee Wells Fargo alleged five counts against Manager HP. Counts I through IV are conversion claims and allege that Manager HP "wrongfully diverted and converted funds" from four nursing homes in breach of its fiduciary duty. Second Amend. Compl., ¶¶ 15, 17, 19, 21. Count V, a breach of fiduciary duty claim, alleges that Manager HP "funded and facilitated the bankruptcy filing of Malachi/Doric in order to frustrate efforts to discover and hold it accountable for its diversion of funds." Second Amend. Compl., ¶ 23. Subsequently, Trustee Wells Fargo filed the motion now before the Court, requesting that the Court grant partial summary judgment in its favor by finding that Manager HP wrongfully diverted funds from four receivership estates.

## II.     Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue

of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence

4

favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**III.   Analysis**

Trustee Wells Fargo argues that summary judgment is appropriate because, as of July 31, 2001, Manager HP diverted more than $1,851,468 from four profitable receivership estates to certain receivership estates which were not financially stable. Trustee Wells Fargo argues that this diversion of funds is contrary to the terms of the Court's Receivership Order which required Manager HP to keep the funds of one receivership estate separate from the funds of another receivership estate. Therefore, Trustee Wells Fargo requests that its motion for partial summary judgment be granted in the amount of $1,851,468.

Manager HP concedes that it diverted $1,851,468 from some receivership estates to other receivership estates. Manager HP argues, however, that the diversion of funds was necessary to fulfill its duties under the Management Agreements, and that this use of funds was not in violation

of this Court's orders or the Management Agreements.

The Court finds that Manager HP's argument is meritless. The controlling Receivership Order clearly prohibits Manager HP's actions. Under the terms of the Receivership Order, monies from each separate facility are to be used for that same separate facility. *See* Sections 5-7, Exh. 11, Pl. Mot. Sum. Judg., docket entry 73 (Sept. 30, 2005). Manager HP cannot excuse its diversion of funds by claiming that it did not have notice of the terms of the Receivership Order, nor by claiming that it was not bound by the terms of the Receivership Order. The Receivership Order was issued by this Court and is the governing document that authorized the Receiver to enter into Management Agreements with Manager HP in order to manage the receivership estates.

Furthermore, Manager HP cannot excuse its actions by interpreting the Management Agreements as permitting diversion of funds. The Management Agreements are necessarily subject to the Receivership Order, and any interpretation of the language of the Management Agreement must be made in accordance with the governing document, the Receivership Order. Furthermore, the very terms of the Management Agreements indicate that Manager HP is to create bank accounts for the particular facility and that all costs and expenses for that particular facility are to be paid out of that same facility's bank accounts. *See* Section 1.05, Exhs. 3-9, Pl. Mot. Sum. Judg., docket entry 73 (Sept. 30, 2005). Nowhere in the Management Agreements is Manager HP authorized to commingle monies from the different bank accounts and to use monies from one facility to support another different facility. Manager HP's actions in diverting funds are clearly contrary to the terms of the Receivership Order and the Management Agreements.

Manager HP also argues that there is a genuine issue of material fact as to the amount of money that was diverted. Manager HP admits that it diverted more than $1.8 million by July 31,

2001, but argues that contributions made after July 31, 2001 and certain setoffs reduce the amount for which it is liable. The Court finds these arguments to be meritless for the reasons put forward by Plaintiff in its November 18, 2005 reply, namely, because Manager HP fails to bring sufficient evidence of post-July 31 contributions to create a genuine issue of material fact and because there is a lack of mutuality to support setoffs.

In conclusion, there is no genuine issue of material fact that as of July 31, 2001, Manager HP diverted $1,851,468 in funds from four receivership estates, contrary to the plain terms of the Receivership Order and Management Agreements. Plaintiff is entitled to summary judgment as a matter of law.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment [docket entry 73] is **GRANTED**.

**SO ORDERED.**

Dated:   March 30, 2007                                  s/Paul V. Gadola
                                                          HONORABLE PAUL V. GADOLA
                                                          UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   March 30, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
             Elizabeth J. Fossel; Kay S. Kress; Aaron M. Phelps            , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                Patrick J. McLaughlin; Richard C. Rose         .

                                                          s/Ruth A. Brissaud
                                                          Ruth A. Brissaud, Case Manager
                                                          (810) 341-7845