UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


YEO & YEO, P.C., as receiver for The
Malachi Corp.,                                    Case No. 2:03-cv-40340

          Plaintiff(s),                           HONORABLE STEPHEN J. MURPHY, III

v.

HP/MANAGEMENT GROUP, INC.,

          Defendant(s).
_____/

**ORDER GRANTING PLAINTIFF'S MOTION
FOR FINAL SUMMARY JUDGMENT** (docket no. 96),
**DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
 (docket no. 98)**, AND DISMISSING CERTAIN CLAIMS WITHOUT PREJUDICE**


**INTRODUCTION**

        This case is ancillary to another before the Court, *Norwest Bank v. Malachi Corp.*, no.

99-cv-40146.  Before September 2008, both proceedings were before District Judge Paul

V. Gadola; at that time they were transferred to the undersigned.  The facts of *Norwest*

*Bank* were that The Malachi Corporation purchased or constructed several nursing homes

using funds from bonds issued by the communities in which the homes were located, and

then defaulted on the mortgages that secured the loans for the bondholders.  As the

mortgages explicitly provided that each of the homes could be placed in receivership in the

event of default, Malachi and Norwest Bank, the trustee for the bondholders, stipulated to

the appointment of a receiver, which was in fact ordered by Judge Gadola.

HP/Management Co. ("HP"), the defendant in this action, was hired by the receiver to

manage the nursing home properties.

        By now, all the nursing homes originally purchased or built by Malachi have been sold

by the receiver, and thus the receiverships consist primarily of financial assets and a few

causes of action, such as this one.  In the *Norwest Bank* case (hereinafter "the receivership action"), Judge Gadola issued an order prohibiting the litigation of any claim against the receivership estates except in the form of a claim filed in this Court.  A number of such claims have been filed, and are awaiting adjudication until the final assets of the estates – including this cause of action – can be liquidated.   It appears that each of the receiverships' assets will prove to be insufficient to repay all its creditors in full.

Because each nursing home had been security for a separate set of bondholders, Judge Gadola ordered that each facility be placed in a receivership separate from all the others.  Nevertheless, it is undisputed that HP operated all seven facilities as a single concern, often diverting funds from the estates that were showing a profit in order to shore up others of the homes that were unprofitable.  In filing this suit, the trustee, which had renamed itself as Wells Fargo, sought to recover these funds on behalf of the profitable estates.  After the suit was filed, the receiver Yeo & Yeo ("Yeo") was substituted for the trustee as the plaintiff.  Out of a total of approximately $3 million sought by Yeo, Judge Gadola has granted partial summary judgment as to all but $1,177,695.  Docket no. 85.  That amount is the subject of these motions.

## PROCEDURAL POSTURE

Currently before the Court are Yeo's motion for summary judgment as to the remaining $1,177,695, and HP's cross-motion for summary judgment as to its partial defense of setoff.  HP concedes that under the law of the case, Yeo is entitled to recover $911,323 on behalf of the receiverships.  HP represents that it intends to appeal the rulings that entitle the receiverships to this amount, but does not contest them here.  HP does contest the remaining amount, which represents interest on the diverted funds.  HP claims that, as manager of the estates, it did not and was not required to place the nursing homes'

2

profits into interest-bearing accounts.  As a result, HP argues, interest is not a proper item of damages.

Yeo disagrees with HP's position as to the interest damages, but claims that the most cost-effective course of action available to Yeo at this point is to immediately procure a final judgment for the estates in the now-uncontested amount of approximately $2.7 million. Thus, Yeo proposes to voluntarily dismiss its claim for the interest damages, as well as the only remaining contested claim in its complaint, one for breach of fiduciary duty in conjunction with a bankruptcy filing by Malachi that briefly stayed proceedings in the receivership action.[1]  In response, HP asserts that these portions of the complaint should be dismissed only with prejudice, or without prejudice but on condition that the receiverships pay its costs and fees incurred in defending them.  Yeo requests that, if the Court imposes these conditions on dismissal, it be permitted to withdraw its request for voluntary dismissal and continue to trial. It also notes that if this case continues to trial for any other reason, either before or after appeal, it would wish to reassert its claims for interest damages and for breach of fiduciary duty.

HP's motion for partial summary judgment pertains to its partial "defense" of setoff. Specifically, HP claims that some of the receivership estates owe it money for management fees it rendered to them, but was not compensated for.  It argues that this amount should be deducted from any judgment against it in this proceeding.  This would be advantageous for HP because it would effectively permit HP a dollar-for-dollar recovery of the amounts it is owed, whereas if it were forced to pay the entire judgment to the receiverships and

---

[1]  Apparently the retainer fee for Malachi's bankruptcy counsel was paid by a sister corporation of HP.  In this suit, Yeo claims that this amounted to an intentional impediment by HP of the bondholders' ability to collect from the receivership estates, which violated Judge Gadola's order and HP's fiduciary duties. The bankruptcy court later dismissed the petition, for apparently unrelated reasons, and the receivership proceedings continued.

then submit its claims against them along with other creditors, it would likely receive only a pro-rata recovery due to the estates' anticipated inability to pay all their debts.

Judge Gadola has previously ordered that the *amount* of HP's claim against the estates is to be litigated in the receivership case, not here, while the applicability of setoff is to be litigated in this action. Thus, even if HP is entitled to setoff, the amount of the setoff will have to be determined in the receivership case before it can be deducted from the judgment here.

**GOVERNING LAW**

I. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as to a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

Here, the parties agree as to the facts and (until the appeal at least) the law governing the disposition of approximately $900,000 of the receiverships' remaining claims. What remains are the questions of (1) whether HP is entitled to setoff, and (2) whether Yeo's claims for interest damages and breach of fiduciary duty should be dismissed only with prejudice, or whether voluntary dismissal should be conditioned on its payment of HP's fees and costs associated with those issues.

4

II.  Proceedings Involving Receiverships

 Although the practice is becoming rarer in modern times, the courts retain their age-old equitable power of appointing a receiver to take custody of real property, when the circumstances warrant it.  *Liberte Capital Group, LLC v. Capwill*, 462 F. 3d 543, 551 (6th Cir. 2006).  Under Federal Rule of Civil Procedure 66, "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."  According to that practice,

> [o]nce assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets. The receivership court has a valid interest in both the value of the claims themselves and the costs of defending any suit as a drain on receivership assets.

*Liberte Capital*, 462 F. 3d at 551.  (citations omitted).  Thus, in resolving claims brought against receiverships, a court may use "abbreviated procedures (including the use of a single receivership proceeding to resolve all claims)," in order to "advance the government's interest in judicial efficiency by reducing the time needed to resolve disputes, decreasing the costs of litigation, and preventing the dissipation of the receiver's assets." *SEC v. Basic Energy & Affiliated Resources*, 273 F. 3d 657 (6th Cir. 2001) (citations omitted).  Alternatively, a court may permit some claims to be adjudicated in satellite proceedings, before the receivership court or other courts.  This litigation, in which the validity and amount of HP's claim will be litigated in the receivership estate but its right to set off that claim will be determined here, is something of a hybrid of both approaches.

 In any event,

> [t]o the extent that a party has a colorable claim against a receiver or the entities in receivership, due process demands that the claimant be heard, but the district court exercises significant control over the time and manner of such proceedings. . . .  In addressing claims on the receivership estate brought before it, the district court may consider both the merits of the individual claim and the equities attendant to the situation.  The inability of a

receivership estate to meet all of its obligations is typically the sine qua non of the receivership. In adjudicating claims on the receivership estate, or in making a decision to permit satellite litigation to resolve any claims, a district court may therefore consider such factors as litigation costs as a tax on the receivership estate, the ability of the parties to resolve their claims in the receivership court versus elsewhere, any culpability on the part of the claimant, and the implications for any satisfaction of an award on other claimants to the estate.

*Liberte Capital*, 462 F. 3d at 552-53.

III.  Setoff and Recoupment

The claim, or aspect of a claim, which HP has asserted here is a right to setoff.  "The right to setoff is a widely recognized common law right which allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A."  *In re Gordon Sel-Way, Inc.*, 270 F. 3d 280, 290 (6th Cir. 2001) (citation and quotation marks omitted).  Here, Judge Gadola adopted a bankruptcy-like approach to dealing with these estates, which in the Court's understanding means that bankruptcy law informs the Court's exercise of its equitable discretion in this proceeding, but does not control it.

The Bankruptcy Code does not create any setoff rights, but neither does it wholly preempt whatever setoff rights are created by other sources of law.  It does, however, place some limitations on those rights, in that it permits the setoff only of "a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ."  11 U.S.C. § 553(a).  This is known as the "mutuality" requirement.  Setoff, however, is ultimately an equitable remedy, and  "[o]nce the prerequisites for establishing a setoff claim are established, the court generally looks to the equities in order to determine if the setoff should be allowed."  *Gordon Sel-Way*, 270 F. 3d at 292.

6

HP also asserts that even if it is not entitled to use the doctrine of setoff to reduce the amount of the receiverships' judgments against it, it should be able to use the related defense of recoupment for that purpose.  Recoupment is similar to setoff, but it applies under different sets of conditions.  Specifically, recoupment is available without regard to the mutuality requirement imposed on setoff by the bankruptcy code, but only where both the debt and the claim to be set against it both arose from the same transaction.  *Lee v. Schweiker*, 739 F. 2d 870, 875 (3d Cir. 1984).  Typically, this means that the debt and the credit both arose from the same contract.  *Id.*  Like setoff, however, recoupment is also available only when the equities of the situation permit it.  *In re Straightline Investments, Inc.*, 525 F. 3d 870, 882 (9th Cir. 2008).

## ANALYSIS

### I.  Setoff and Recoupment

Here, the Court need not definitively decide whether either the mutuality or the "same transaction" prerequisites for the granting of setoff and recoupment have been met.  This is because, even if they were met, the Court would not grant either remedy unless the equities suggested it, and, as will be explained, here they decidedly do not.  Thus, for purposes of this analysis, the Court will assume without deciding that HP's debts to the receiverships and its claims against them are mutual obligations suited for setoff, or at least that they arose out of the same transaction, so that recoupment could be applicable.

In the Court's view, though, there is no issue of material fact remaining as to the equities of the situation, which strongly suggest that the Court deny setoff or recoupment.  The gravamen of the complaint in this case is that HP violated a court order, and breached its fiduciary duties to each of the plaintiff receiverships, by diverting millions of dollars to support other receiverships that were failing financially under HP's management.  Although

7

HP reserves its right to appeal the rulings in this case, it concedes that under them it is liable for an aggregate of at least $2.7 million on this theory.  The most innocuous explanation possible for these diversions is that HP was simply foolishly unaware of the requirements of the receivership order that authorized it to manage the nursing homes, either because its employees never read the receivership order or because they forgot or failed to inform the appropriate personnel of its requirements.

In any case, even if HP were able to establish this sort of "pure heart, empty head" argument, in the Court's view it would not justify the equitable remedies of setoff or recoupment.  As noted above, the effect of these remedies would be to give HP's claims against the receiverships an indefeasible first priority over all other claims, at least to the extent of the diverted amounts.  Thus, HP has admitted, under the law of the case, that its management violated a court order and wrongfully caused $2.7 million in aggregate losses to its clients, and yet claims that it is also entitled to preferential treatment in regard to the fees that it is owed for its management services.  In justice and equity, the Court cannot entertain such an argument.[2]

---

[2] HP claims that giving it preferential treatment would at least not be inequitable to the other creditors of the receiverships, because (says HP) under the receivership order itself HP is entitled to be paid from the proceeds of the receiverships before any other creditors. But the question of priority in the receivership proceeding will properly be considered in that proceeding, and not here.  Most notably in this regard, HP has presented no argument that in determining an equitable division of the estates, the Court is rigidly required to pay in full all claims against the estate, in the order in which the Court directed the receiver to compensate creditors during the pendency of the estates.  At any rate, as the question of HP's priority remains an undecided one, the equitable concerns surrounding a grant of preferential treatment to its debts also remain.

Thus, no material issue of fact remains: setoff and recoupment should and will be denied.[3]  This does not of course preclude HP from prosecuting its claims against the receiverships in the receivership proceeding.

II.  Dismissal of the Receiver's Remaining Claims

After judgment in the undisputed amount is entered in favor of the receiverships, only their claims for interest damages and breach of fiduciary duty connected with the bankruptcy filing will remain from the receiver's original complaint.  As noted, the receiver Yeo wishes to dismiss these claims without prejudice, while HP requests a dismissal with prejudice, or that a without-prejudice dismissal be conditioned on the payment of some of HP's litigation costs.

Federal Rule of Civil Procedure 42(a)(2) provides that typically, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Here, the Court recognizes that while this litigation has been protracted, it has been almost entirely directed at issues of liability on the receiverships' diversion claims, not at interest damages on those claims or at liability on the bankruptcy-filing claim.  HP, however, represents that there has been extensive discovery related to the bankruptcy-filing claim, and maintains that it would be unfair to permit the receiver to dismiss the claim

_____

[3] Judge Gadola apparently agreed.  As noted, summary judgment was already granted in this matter as to a significant portion of the funds sought by the receiver.  In opposing the earlier motion for partial summary judgment, HP made arguments in favor of a setoff (as to which it maintained that material questions of fact remained) very similar to those it makes here.  In granting the motion, Judge Gadola "f[ound] these arguments to be meritless . . . because Manager HP fails to bring sufficient evidence of post-July 31 contributions to create a genuine issue of material fact and because there is a lack of mutuality to support setoffs."  Docket no. 85, p. 7.  Neither side, however, has briefed the significance of this ruling in regard to the instant motion nor has either party even mentioned the ruling in connection with this motion.  Therefore, the Court will not address whether summary judgment should be denied to HP based on the law of the case as well as on the equities of the situation.

now while leaving it free to re-file it later. The receiver Yeo denies that substantial discovery has occurred in regard to either the bankruptcy-filing claim or the interest damages.

The Court agrees that parties, especially defendants, should generally be protected from the duplicative costs and fees that can arise from dismissals and re-filings. The Court, however, does not regard the discovery expenses associated with the bankruptcy-filing claim as potentially duplicative. If this issue returns for more litigation, either after appeal or on a separate filing, it seems likely that HP will be able to use most or all of the information obtained through discovery in this case. Thus, the worst-case scenario for HP in an unconditional voluntary dismissal would be that it would be found liable in a later proceeding, with at most a small amount of duplicative costs. The Court does not regard this possible set of events as requiring any precautionary conditions on dismissal at this point. Therefore, without settling the factual dispute as to the extent of the discovery that has occurred, the Court will permit Yeo a voluntary dismissal of its remaining claims, without prejudice.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that defendant's motion for partial summary judgment is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for final summary judgment is **GRANTED**, in the amount of $2,762,791. This grant of summary judgment includes the judgment amount of $1,851,468 which has already been granted in the order granting partial summary judgment, docket no. 85, plus $911,323 in further liability conceded by defendant on this motion. This grant of summary judgment does not

include the interest damages component.  Instead, this interest damages claim is

**DISMISSED WITHOUT PREJUDICE.**


**IT IS FURTHER ORDERED** that the remainder of the complaint, Plaintiff's bankruptcy

damages claim, is **DISMISSED WITHOUT PREJUDICE**.


**SO ORDERED.**


s/Stephen J. Murphy, III _____
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 23, 2009

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on April 23, 2009, by electronic and/or ordinary mail.

Alissa Greer_____
Case Manager