UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YEO & YEO, P.C., as Receiver for The Malachi Corporation,

Plaintiff,

v.

HP/MANAGEMENT GROUP, INC.,

Defendant.

_________________________________/

Case No. 03-cv-40340

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING PLAINTIFF'S**
**SECOND MOTION FOR FINAL SUMMARY JUDGMENT**

On August 23, 2009, the Court granted summary judgment in favor of Yeo & Yeo, P.C. ("Yeo"), as Receiver, with respect to some of its claims asserted against HP/Management Group, Inc. ("HP"). The Court also granted voluntary dismissal of Yeo's other claims against HP for interest and breach of fiduciary duty relating to the Malachi Corporation ("Malachi") bankruptcy filing. On June 25, 2009, the Court clarified its earlier order, recognizing that the earlier order did not resolve all claims in the case. Remaining was HP's counterclaim of indemnity for costs in defending against the fiduciary duty claim. In the instant motion, Yeo request summary judgment on this counterclaim.

**FACTUAL BACKGROUND**

The Court is very familiar with the background of this case. The case is ancillary to a still-pending receivership case filed in this Court in 1999 (*Norwest Bank MN Nat'l v. Malachi Corp.*, Inc., Case No. 99-40146). In 2003, Wells Fargo, as trustee, filed the instant action alleging that HP, hired as manager by the former receiver, Healthlink Services, LLC ("Healthlink"), violated fiduciary duties and the Court's August 10, 1999 First Amended Order Appointing Receiver by co-mingling and diverting funds of the receivership estates.

After the receivership action was filed, it was briefly stayed when Malachi filed for bankruptcy. Malachi's counsel in the bankruptcy proceeding later revealed that its retainer fee was paid by HP Properties, a sister corporation of HP. The bankruptcy court later dismissed the petition, for apparently unrelated reasons, and the receivership proceedings continued in this Court.

One claim in the instant action, later voluntarily dismissed by the Court, was a claim of breach of fiduciary duty against HP, in which Yeo asserted that by facilitating Malachi's bankruptcy filing, HP violated the Court's receivership order by knowingly impeding the administration of the receivership estates. In the Court's order of August 23, 2009, Yeo was allowed to voluntarily dismiss this portion of its complaint without prejudice to save Yeo the expense to the receivership estates of proving up the case and to focus on collecting the amount awarded on other claims in that summary judgment order.

After the complaint was initially filed, HP filed a third-party complaint against Healthlink, as receiver, alleging that pursuant to the identical management agreements for each of the six receivership estates, Healthlink, as receiver, promised to indemnify HP for any and all losses, claims, damages, or liabilities arising out of or relating to the operation of the facilities. Judge Paul V. Gadola – earlier presiding over the case – found that insofar as the third-party complaint claimed indemnity under the management agreement, HP stated a claim for relief. Healthlink was later removed as receiver and replaced by Yeo, at which time the third-party complaint was then asserted against Yeo, as receiver. Yeo was later substituted as the plaintiff in this case, so HP's third-party claim of indemnity became a counterclaim for indemnity.

All claims in the instant action, except for the counterclaim for indemnity, were resolved in the Court's April 23, 2009 order. The claim for indemnity is the only item left

in the case.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

### II. Analysis

HP's counterclaim is for contractual indemnification under the Long-Term Care Facility Management Agreements governing HP's management of the receivership estates. Section 5.09 of each of the agreements provides:

> Receiver agrees to indemnify and hold Manager and its officers, directors, agents and employees harmless from and against all losses, claims, damages and other liabilities, including the costs and expenses incurred in connection therewith, arising out of or relating to the Receivership or operation of the Facility (except those resulting from the willful misconduct, breach of contract or gross negligence of Manager), including, without limitation, any liability asserted against Manager or any of its officers, directors, employees or agents by reason of any action taken by any of the foregoing while performing the duties of Manager hereunder on behalf of Receiver.

Count V of Yeo's Second Amended Complaint alleges that HP breached its fiduciary duty by funding and facilitating, through an affiliate (HP Properties), the bankruptcy filing of Malachi in order to frustrate efforts to discover and hold HP accountable for diversion of funds. HP denied all liability and filed a third-party complaint against the Receiver for

indemnity under the management agreements. Judge Gadola found the allegations stated a claim "arising out of or relating to the Receivership," and consequently fell under the indemnity provision in the agreements. Because there is no judgment with respect to the bankruptcy breach of fiduciary duty claim, HP seeks indemnity only for costs incurred in defending against the claim of breach of fiduciary duty.

Although it appears at first blush that HP is contractually entitled to indemnity for costs incurred in defending against the bankruptcy fiduciary duty claims, Yeo disagrees, and argues it is entitled to summary judgment on the counterclaim for a few reasons two of which the Court finds convincing.

A. HP's Conduct Violated the Management Agreements

First, and most convincingly, Yeo argues that the actions of HP violated the management agreement by causing the bankruptcy filing of Malachi because HP's president, Douglas Mittleider, funded the bankruptcy counsel. The management agreement between HP and the receiver states:

> 1.01 Control Retained by Receiver. Receiver, acting by and through its duly authorized representative, shall at all times exercise overall control over the assets and operations of the Facility, and Manager shall perform the duties herein required to be performed by it as the agent of Receiver and in accordance with the policies and directives from time to time adopted by Receiver.
>
> 1.02 Changes and Methods of Operation. Manager shall make substantial changes in the method of operating the Facility only after timely notification to and approval from Receiver.

*See* Exhibits to Third Party Complaint, Docket no. 27.

By causing the bankruptcy filing, which effected a substantial change in the method of operating the facilities, Douglas Mittleider, as agent for HP, did so without notification and approval from the Receiver in violation of section 1.02 of the management agreements.

Additionally, this conduct was an exercise of control over the assets and operations of the facilities, conduct specifically reserved for the Receiver according to section 1.01. Accordingly, Yeo argues, HP cannot seek indemnity for acting in a way expressly contrary to the agreements.

HP's defense is that Yeo sued the wrong entity -- it was HP *Properties*, and not HP (Management), that funded bankruptcy counsel. HP Properties and HP are separate legal entities, and the fact that Douglas Mittleider was President of HP and CEO of HP Properties does not make them a single entity. HP claims that no theory of liability asserted, or otherwise, would allow the Court to hold HP responsible for the actions of HP Properties. In fact, HP claims, Michigan law requires that separate corporate entities be treated separately, unless the Court chooses to pierce the corporate veil, which theory has not been asserted here. *See Gledhill v. Fisher and Co.*, 272 Mich. 353, 357-58 (1935).

Yeo argues that HP's position, though clever, is wrong. It argues that if HP had no authority to cause Malachi's bankruptcy filing, it is clear that HP Properties would also have no authority and Mittleider, in his role as president of HP had a duty to stop himself in his role as CEO of HP, from facilitating the bankruptcy filing. Yeo submits that this case is not about piercing the corporate veil, but rather about agency. Mittleider was an agent of both HP and HP Properties and cannot choose on whose behalf he was acting when the only connection either entity had with the receivership was that HP was manager of the receivership estates. HP Properties had absolutely nothing to do with the receivership and its facilitation of the bankruptcy was the doing of Mittleider, president of HP. The Court agrees.

Yeo's agency argument finds support in legal authority. *Fletcher Cyclopedia of the Law of Private Corporations, Vol. III* (2002) (regarded by the legal community as an

authoritative treatise on corporation law) states that generally, "a corporation is charged with constructive knowledge, regardless of actual knowledge, of all material facts of which its officer or agent receives notice or knowledge ... So, notice to an agent of a corporation relating to any matter of which the agent has the management and control is notice to the corporation." *Fletcher Cyc Corp*. § 790. The treatise further states "[therefore], knowledge of fraud, perpetrated by a corporation in acquiring stocks, will be imputed to another corporation to which it transfers them, where the officers acting for the transferee corporation are the same persons who as officers of the transferor carried out the fraud." *Id.* § 824. The principle here is that knowledge of a fact by one corporation is attributable to another corporation when a common agent has knowledge of that fact.

Support for Yeo's argument is also found in the common law of agency as applied by courts in Michigan and Georgia.[1] *See, e.g.*, *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 213-214 (1991) (citing and noting adoption of reasoning in *United States v. TIME-DC, Inc.*, 381 F. Supp. 730, 738 (W.D. Va. 1974) ("knowledge acquired by employees within the scope of their employment is imputed to the corporation ... [T]he corporation is considered to have acquired the collective knowledge of its employees and is held responsible for their failure to act [according to that knowledge]."), *Gordon Sel-Way v. Spence Bros., Inc.*, 177 Mich. App. 116, 124 (1989) ("A corporation is merely a legal fiction acting through its officers and agents. One of the burdens of acting under the

---

[1] As Yeo correctly points out, there is a potential choice of law issue, as the management agreements provide that the agreement was signed in Georgia and all the terms and provisions in the agreement, as well as the rights and obligations of the parties to the agreement, shall be construed and enforced in accordance with the laws of Georgia. Michigan also potentially has a significant connection to the dispute since the agreement contemplates performance in Michigan, where some of the receivership estates are located. The common law of the Michigan and Georgia, with respect to this issue, however, is consistent.

corporate form is that the law will impute the knowledge of the individual officers and employees at a certain level of responsibility to the corporation."); *Stein Steel & Supply Co. v. Franco*, 148 Ga. App. 186, 188 (1978) ("The charge was a correct statement of the law that knowledge of officers of a corporation is knowledge to that corporation and the corporation is bound thereby."); *Burch v. Old Nat. Bank & Trust Co.*, 40 Ga. App. 497 ("But knowledge of the president is imputable to the corporation.").

Applying these principles to this case, HP had constructive knowledge of the bankruptcy filing because its agent, Mittleider, had actual knowledge since he was the one funding bankruptcy counsel as CEO of HP Properties. This knowledge imposed a duty upon HP to prevent its agent from further funding bankruptcy counsel and to otherwise take remedial measures. HP's failure to prevent the bankruptcy makes it complicate in the facilitation of the bankruptcy filing in violation of the management agreement. HP violated the management agreements by not stopping its agent, Mittleider, from funding bankruptcy counsel.

HP argues that although HP knowledge of the bankruptcy filing can be imputed to HP, knowledge is distinct from a duty, so even if HP *knew* of the bankruptcy filing, this knowledge did not impute a duty upon HP to stop the facilitation of the bankruptcy. The Court disagrees. Although the law generally makes distinctions between knowledge and duty, the distinction is not warranted here, where both companies are controlled by the same person. HP's knowledge of Mittleider's conduct gave rise to a duty to prevent Mittleider from further conduct that was in clear violation of HP's duties and obligations under the management agreement. It was Mittleider who was responsible for funding bankruptcy counsel. His knowledge was knowledge to HP. Once HP had knowledge, a duty arose to stop him from violating the management agreement by facilitating the

bankruptcy filing. HP cannot defend on the ground that its agent was in fact acting for another legal entity when the agent facilitated the bankruptcy filing. It is clear that HP, as principal, is responsible for the conduct of Mittleider, its agent, when HP knew of Mittleider's conduct and that it violated the management agreements, and did nothing to prevent it or remedy the violation.

HP next argues that even if it is legally responsible for the actions of HP Properties, there is no basis for denying HP indemnity. This is apparently because HP Properties did not "cause" Malachi to file bankruptcy. Rather, as stated in Mittleider's affidavit, Malachi sought bankruptcy counsel and HP Properties answered the call. HP submits that the decision to file bankruptcy was between Malachi and bankruptcy counsel, and that one cannot "cause" another to file for bankruptcy; it is a right possessed by the individual person or entity who chooses to file. Yeo replies that HP Properties did in fact cause the filing because it is undisputed that the bankruptcy filing would not have occurred without HP Properties, controlled by Mittleider, funding the retention of bankruptcy counsel. The Court agrees with Yeo.

Although it cannot be said that HP Properties *forced* the receivership to file bankruptcy, its funding of the bankruptcy counsel was a cause-in-fact of the bankruptcy filing. That is, but for the funding, Malachi would have never filed bankruptcy. Mittleider's conclusory opinion in his deposition that Malachi still would have filed bankruptcy even absent the financial assistance of HP Properties is not enough to raise a genuine issue of material fact as to causation. *See* Depo. of Mittleider, docket no. 120, Ex. B., p. 135. Mittleider's opinion provides only a "scintilla of evidence in support of [HP's] position" as to causation, which is not enough to prevent summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Based solely on Mittleider's opinion, no reasonable

jury could find that without the financial assistance of Mittleider and HP Properties, Malachi could ever have filed for bankruptcy since it could not afford bankruptcy counsel without financial assistance and it has not been asserted that Malachi could have obtained the money elsewhere.

HP argues that even if the Court finds it caused Malachi's bankruptcy filing by funding counsel, doing so did not violate sections 1.01 and 1.02 of the management agreements. This is apparently because section 1.01 governs what the *receiver* is to do; it says nothing of financial transactions between HP and other entities. Section 1.02 prohibits HP from unilaterally making substantial changes in the method of *operating* the facilities, but, HP asserts, bankruptcy filing is not a substantial change in the method of operating the facilities. The Court finds these arguments unpersuasive. The purpose of including 1.01 in the agreements, as the first clause, was to make sure the manager was aware that it was the *receiver*, and *not the manager*, who was to exercise control over the assets and operations of the facility. This clause limited the manager's ability to act.

With respect to HP's argument as to section 1.02, it cannot be disputed that bankruptcy imposed a substantial change in the method of operating the facilities. When a company files for bankruptcy, the debtor ceases to operate the business. Control is transferred to a distinct legal entity, either a trustee or a debtor-in-possession, who runs the business under the supervision of the bankruptcy court. *See In re Mammoth Mart*, Inc., 536 F.2d 950, 954 (1st Cir. 1976). The Court agrees with Yeo that a more substantial change in the operation of a business is hard to imagine.

*B. HP had no Authority to Cause the Filing of Bankruptcy*

Yeo also argues that indemnity is unwarranted because under no circumstances could HP, as manager for the receiver, have authority to cause the filing of bankruptcy if

the receiver itself had no such authority. Thus, in addition to expressly violating the management agreement as demonstrated above, HP's facilitation of the bankruptcy was also not *permitted* by the management agreement. The Court agrees. Nothing in the order appointing the receiver gave the receiver such authority. Further, it is implausible that Judge Gadola would have issued an order giving the receiver or a manager it elected to hire the authority to usurp the Court's jurisdiction over the receivership estates through the filing of a bankruptcy petition. Accordingly, HP can not obtain indemnity for defending actions it never had the authority to take.

## CONCLUSION AND ORDER

Yeo's second motion for summary judgment will be granted. Although it appears from the language of the indemnity provision in the management agreements that HP is entitled to indemnity, HP is not entitled to attorneys' fees and costs associated with defending against a claim for breach of fiduciary duty arising out of the bankruptcy filing. This is because HP violated the terms of the management agreements and because HP had no authority to facilitate the bankruptcy filing of Malachi.

**WHEREFORE** it is hereby **ORDERED** that Yeo's second motion for final summary judgment (docket no. 118) is **GRANTED** and HP's counterclaim for indemnity of attorneys' fees and costs incurred in defending against the breach of fiduciary duty claim related to Malachi's bankruptcy filing (docket no. 37) is **DENIED**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 20, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 20, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager